Charles A. Kilvert, et al.
vs.                    No. 12345.
Joseph M. Connelly

February 4, 1933.

BAKER, P. J.   Heard without a jury.

In this case the plaintiffs claim that they were ordered by the defendant to purchase for him 200 shares of a certain stock at the price of $33 per share, but when the stock was delivered, defendant refused to accept it and the plaintiffs were compelled to dispose of it in the open market at $13 per share.   They are now suing to recover the difference between the purchase price and the sale price and certain incidental expenses.

The declaration is in several counts and the defendant has pleaded the general issue and the Statute of Frauds. He urges first that this was a transaction of purchase and sale between himself and the plaintiffs, and that, as the amount involved was over $500 and the plaintiffs have no memorandum in writing signed by him, the Statute of Frauds applies and he cannot be held.

There undoubtedly are at times cases in which an investment broker not a general stock broker sells his own securities on his own behalf to a customer.   On such a state of facts, the relation of buyer and seller would probably exist between the parties and the statute might apply, but it seems quite clear that in the ordinary case where one purchases stock through a broker, that then the broker is merely the purchaser's agent.   The broker does not sell to or buy from his customer.

Meyer, Law of Stock Brokers and Stock Exchanges, pp. 241-249.

While there are some cases contra, nevertheless, the decided weight of authorities would seem to be that a contract for subscription to shares of stock in a proposed corporation or to buy unissued shares in an existing corporation is not within the Statute of Frauds.

14 A. L. R., p. 394 (Note).

On the evidence presented in this case, and according to the law, the Court is of the opinion that the transaction in question was not a matter of purchase and sale between the parties but that the plaintiff were agents for the defendant and that the defense of the Statute of Frauds cannot successfully be maintained.

The defendant then urges that if the relation between the parties was that of principal and agent, then the plaintiffs are not entitled to recover, first, because they did not make full disclosure to the defendant of all the facts and circumstances of transaction but conducted the business so as to derive therefrom a secret profit, and, secondly, that they did not use due diligence in procuring a delivery of the stock ordered.

In connection with the claim that the plaintiffs did not make full disclosure, the facts seem to be as follows:

The stock in question, which the defendant was ordering, was to be issued by a corporation which was connected with or a subsidiary of another corporation, and the new stock could be purchased either for cash or by the use of rights.   If rights were employed, it was necessary to pay $15 cash and present 5 rights at approximately $3.60 per right, amounting to $18, which, with the $15 cash, would make up the $33 necessary to procure a share of the new stock.   Apparently the rights in question were traded in the market at between $3 and $3.60 per right.   In obtaining the stock in this case, the plaintiffs made use of certain rights which they themselves owned at the price of $3.60 per right. They charged no commission to the defendant for handling the transaction.   It would seem that the only profit made by the plaintiffs was such

as they might be able to make by use of their rights at a figure of $3.60 per right. Moreover, the evidence of all the parties in the case shows that the agreed price for the stock was $33 per share whether for cash or by the use of rights.

Under these circumstances, it does not seem to the Court that the defendant can very seriously urge that because the plaintiffs did not go into the market and buy rights at less than $3.60 in order to obtain the stock for him, they are guilty of not making a full disclosure or of attempting to make secret profits. In the judgment of the Court, the evidence does not support this claim of the defendant.

The most difficult question in the case relates to the point as to whether the plaintiffs acted with reasonable diligence in procuring the stock. The determination of this involves a careful examination of the evidence.

The defendant was not a novice in stock transactions but had been buying and selling stock through various brokers for some time. On September 12, 1929, a salesman connected with the plaintiffs' office procured from the defendant an order for 200 shares of the stock involved herein. This stock was new and had not actually at that time been issued. Trading in it started about the time the defendant gave his order.

While the defendant testifies that he did not so understand the situation, the Court believes that the weight of the evidence shows that when the order was taken, it was understood and agreed that the stock was to be delivered "when, as and if" issued. Apparently, three days before September 12th, defendant had purchased through the plaintiffs certain shares of another stock on this same basis, which stock had been delivered September 26th.

The testimony would seem to show that actual official notices of the new issue and of the handling of rights did not come out until about September 28th, although there was some trading in the stock and more or less general knowledge regarding the issue for some time prior to the latter date. When the defendant gave the order, it is clear that no specific date was agreed upon or fixed for the delivery of the stock, other than the "when, as and if" provision. The defendant gave instructions that when the stock arrived it was to be turned over to another broker who would take it up.

There is evidence that some certificates of the new stock—whether in a customer's name or in the form of street certificates is not clear—had actually been delivered in the early part of October. On the 11th of that month the defendant was in the plaintiffs' office and on that date made a purchase for cash of 40 additional shares of the stock involved herein. At that time there was some talk about the previous order for 200 shares. The defendant claims that he cancelled this order. This claim rests entirely on his own testimony. After carefully considering the matter, the Court finds that the weight of the evidence is otherwise. The plaintiffs, through witnesses, denied the cancellation and also produced their record cards of dealings in this stock upon which do appear in red ink cancellation of orders from certain of their customers. The cards were kept in the ordinary course of the plaintiffs' business and appear to be in reasonable and proper form. Nowhere on these cards does it appear that any entry was made showing a cancellation of defendant's order for the 200 shares involved herein.

The time for making use of rights in connection with the purchase of the stock expired October 15th and on October 14th the plaintiffs put the order in to a bank in New York for a considerable number of shares of stock, including the 200 ordered by the defendant, and forwarded their check in the necessary sum to take care of the

matter. Up to this time, the defendant had made no deposit or paid no money for the stock he had ordered. The market held up to $33 per share to about October 24, when it began to fall off. The stock was actually delivered from New York on November 3rd and was immediately tendered to the broker to whom the defendant authorized the plaintiffs to make delivery, but this broker refused to take the stock. The plaintiffs notified the defendant several times of the situation but heard nothing from him. He testifies that he did not receive these letters, but they were sent to his usual address, did not come back to the plaintiffs, and it seems to the Court quite clear that he must have received them. Finally, on November 14th, the plaintiffs sold the stock in the open market at $13 per share.

The Court can discover nothing negligent in the plaintiffs' conduct after the order was given on October 14th. The evidence seems to show that in transactions such as this, some two or three weeks usually elapse before certificates are actually delivered, and as soon as the plaintiffs received the stock, they acted with the proper expedition.

The difficult question to determine is whether the plaintiffs were negligent in not actually ordering any stock between the date of September 12th, when the defendant gave his order, and October 14th, when the plaintiffs notified New York.

Undoubtedly, in the ordinary case time is of the essence in a transaction of this kind because values in the stock market often fluctuate rapidly. This transaction, however, related to a new issue. It seems quite clear to the Court that the arrangement was that delivery was to be made "when, as and if" the stock was issued. The defendant does not claim that he ever fixed any definite date for the delivery to him

of any certificates. At no time did he ever make any payment or deposit for them.

After carefully considering all the evidence, and bearing in mind the nature of the dealings involved herein, the Court finds that the weight of the evidence shows that the plaintiffs were not negligent in handling the matter. That being so, the Court believes that the defendant has no defense to the plaintiffs' claim and that the plaintiffs are entitled to the sum of $4,045.34, which is the loss incurred in the transaction, together with interest at the legal rate from the date of the writ, which is approximately three years, making a total of $4,773.50, for which latter amount the plaintiffs may have decision.

For plaintiffs: Hinckley, Allen, Tillinghast, Phillips & Wheeler.

For defendant: Greenough, Lyman & Cross.